1  Matthew A. Paré, Esq., State Bar No.: 258434
   **LAW OFFICE OF MATTHEW PARE**
   333 H Street, Suite 5059
2  Chula Vista, CA 91910
   Phone: (619) 869-4999
3  Fax: (619) 475-6296
   e-mail: mattparelawca@gmail.com
4

5

6

7

8
                    **UNITED STATES DISTRICT COURT**
9
          **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**
10

11  J & J SPORTS PRODUCTIONS, INC.,          )   Case No.: 1:10-cv-02087-AWI-JLT
                                             )
12           Plaintiff,                      )   **NOTICE OF MOTION AND MOTION TO**
                                             )   **SET ASIDE THE DEFAULT ENTERED**
13  vs.                                      )   **AGAINST DEFENDANTS ARTURO**
                                             )   **FLORES AND ALEJANDRO VAZQUEZ;**
14  ARTURO M. FLORES and ALEJANDRO           )   **FILED CONCURRENTLY WITH**
    ALEX VAZQUEZ, INDIVIDUALLY and           )   **DECLARATIONS OF ARTURO FLORES,**
15  d/b/a LOS AMIGOS a/k/a MARAKAS            )   **ALEJANDRO VAZQUEZ, AND**
    TROPICAL a/k/a LA PLACITA                 )   **ATTORNEY MATTHEW A. PARE**
                                             )
16           Defendants.                     )   *[Pursuant to Federal Rules of Civil Procedure,*
                 JURY TRIAL DEMANDED         )   *Rules 55(c), 60(b)(4)]*
17                                           )
                                             )
18                                           )
                                             )
19                                           )   Date: Monday, July 18, 2011
                                             )   Time: 9:00 a.m.
20                                           )   Judge: Honorable Jennifer L. Thurston
                                             )   Courtroom: Bankruptcy Courtroom
21  ──────────────────────────────────────  )

22

23  TO THE HONORABLE JENNIFER L. THURSTON, PLAINTIFF J & J SPORTS

24  PRODUCTIONS, INC., AND ITS ATTORNEY OF RECORD:

25      PLEASE TAKE NOTICE that on Monday, July 18, 2011, at 9:00 a.m. or as soon thereafter

26  as this matter may be heard by the above-entitled United States District Court, located at 1300 18th

27  Street, Suite A, Bankruptcy Courtroom, Bakersfield, CA 93301, defendants Arturo Flores and

1 Alejandro Vazquez will present their motion to set aside the default entered against them.

2      This motion is being made pursuant to Federal Rules of Civil Procedure, Rule 55(c), and

3 Rule 60(b)(4) and it will be requested that this Court set aside the default that was entered by the

4 Clerk on May 17, 2011. This motion is brought on the grounds that defendants never received

5 actual notice of this lawsuit before the answer was due, there was excusable neglect that caused a

6 delay in filing an answer to plaintiff's complaint, and that defendants have a good and meritorious

7 defense to the claims for relief alleged by plaintiff, among other reasons. The motion is based on

8 this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the

9 declarations of Arturo Flores, Alejandro Vazquez, and attorney Matthew A. Paré, filed

10 concurrently, and upon such other matters as may be presented to the Court at the time of the

11 hearing.

12 DATED: June 15, 2011                   LAW OFFICE OF MATTHEW PARE

13

14                                By:    /s/ Matthew A. Paré

15                                        Matthew A. Paré, Esquire
                                       Counsel for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

# MEMORANDUM OF POINTS AND AUTHORITIES

2                              ## I.

3                         ## INTRODUCTION

4          This case stems from the alleged exhibition of a television program, specifically

5   "Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program,

6   on Saturday, November 14, 2009, at defendants' swap meet. The plaintiff in this action, J & J

7   Sports Productions, Inc. has the exclusive rights to the subject television program, and defendants

8   did not pay J & J Sports Productions, Inc. for the rights to show the subject television program.

9   Defendants, however, were merely the owners of the swap meet where 80 independent businesses

10  were operating, and one of those businesses apparently exhibited the subject television program

11  without the permission or authorization of defendants.

12         In this case, neither defendant was properly served with the summons and complaint, and

13  thus defendants did not receive actual notice of the lawsuit that was filed against them before the

14  answer was due. With regard to defendant Alejandro Vazquez, although the proof of service that

15  plaintiff filed in this case indicates that substitute service was made by delivering the documents to

16  Brian Castillo, at 200 North Grand Avenue, #305, West Covina, CA 91791-1727, defendant

17  Alejandro Vazquez does not even know that person and never even lived at that address. Alejandro

18  Vazquez lives in Sherwood, Oregon. As a result, defendant Alejandro Vazquez had no actual

19  notice of this lawsuit until he had a telephone conversation on June 2, 2011 with co-defendant

20  Arturo Flores.

21         Defendant Arturo Flores also did not receive actual notice of this lawsuit until after the

22  default was entered against him. The proof of service that the plaintiff filed indicates that the

23  summons and complaint were delivered to a "Jane Doe" at 423 South McBride Avenue, Los

24  Angeles, CA 90022, and thereafter mailed to Arturo Flores at the same address. However, that

25  individual, who is actually Marlene Zunia, never gave the lawsuit papers to defendant Arturo

26  Flores, or even informed him about the lawsuit. Rather, she refused to accept the papers and then

27  the process server threw the papers on the street, where they were left. Defendant Arturo Flores

1   also never received the additional copy of the summons and complaint that were allegedly mailed

2   to him at that same address. The first notification that defendant Arturo Flores had that this lawsuit

3   was taking place was the notice that the default had been entered against him.

4         A default was entered against defendants at the request of plaintiff's counsel. At this point,

5   however, defendants respectfully requests that this Honorable Court set aside the default that was

6   entered against them and allow them to have their day in court. There is a strong policy in favor of

7   hearing disputes on their merits, and as the declarations filed concurrently herewith demonstrates,

8   defendants never even had actual notice of this lawsuit before the default was entered against them.

9   Furthermore, defendants have a very good defense on the merits of this case, as detailed in the

10  declarations and explained more fully herein below. Plaintiff would also not be prejudiced by

11  setting aside the default and allowing defendants to be heard. Defendants also did not engage in

12  any culpable conduct that resulted in this default. Defendants request that this Court set aside the

13  default pursuant to Federal Rules of Civil Procedure, Rule 55(c), and Rule 60(b)(4). This matter

14  should ultimately be set for a jury trial following a standard discovery schedule.

15                            **II.**

16                       **ARGUMENT**

17      **A.**     **This Court has the Authority to Set Aside a the Entry of Default**

18         The trial court has the power to set aside the entry of default "for good cause." Federal

19  Rules of Civil Procedure, Rule 55(c). There is some disagreement in the courts regarding whether

20  the "good cause" requirement for setting aside the entry of default under Rule 55(c) differs from

21  the "excusable neglect" standard required to set aside a default judgment under Rule 60(b)(1).

22  Most courts, however, hold that the "good cause" required for relief from entry of default under

23  Rule 55(c) is a more lenient standard that the "excusable neglect" required for relief from a default

24  judgment under Rule 60(b). *Johnson v. Dayton Elec. Mfg. Co.* (8th Cir. 1988) 140 F.3d 781, 783;

25  *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.* (2nd Cir. 1996) 82 F.3d 57, 59; *Sims v. EGA*

26  *Products, Inc.* (7th Cir. 2007) 475 F.3d 865, 868. The reason that there is a higher standard for

27  setting aside default judgments is because once a judgment has been entered there are the public

1   policy considerations favoring finality of judgments and termination of litigation, which do not

2   apply when merely setting aside a default. *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.* (6th

3   Cir. 2003) 340 F.3d 345, 353.

4       Some courts treat the standards as the same, where the good cause standard for setting

5   aside a default is also considered sufficient to demonstrate the excusable neglect required to set

6   aside a judgment. See e.g., *TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F.3d 691,

7   696. The slight differences in standards, however, are probably more semantic than meaningful, as

8   it is the same basic factors that govern relief in both situations. But it is clear that even in the 9th

9   Circuit, courts have an even broader discretion and greater procedural flexibility in evaluating

10  relief from entry of default alone (e.g. a lesser quantum of proof may suffice). *Brady v. United*

11  *States* (9th Cir. 2000) 211 F.3d 499, 504 ("court's discretion is 'especially broad' when … it is

12  entry of default that is being set aside, rather than a default judgment").

13      In this case, defendants are merely seeking to have this Court set aside the entry of default

14  because a judgment has not yet been entered. Plaintiff has not even moved for a default judgment

15  yet. Given the above authorities, this Court's discretion is greatest under these circumstances, and

16  therefore this Court has ample authority to set aside the entry of default and allow this matter to

17  proceed through the normal discovery processes and ultimately be heard on its merits by a jury.

18      **B.    Defendants' Request to Set Aside the Default is Timely**

19      Whether a defendant seeks to set aside mere entry of default under Rule 55(c) or to vacate

20  a judgment under Rule 60(b), the motion must be made within a reasonable time. This is judged

21  by the diligence of the moving party and the intervening prejudice, if any, to plaintiff. *Cracco v.*

22  *Vitran Express, Inc.* (9th Cir. 2009) 559 F.3d 625, 631; *Phillips v. Weiner* (D ME 1984) 103 FRD

23  177, 179.

24      In this case, the default against defendants was entered on May 17, 2011. Within a

25  reasonable time thereafter, defendants are hereby brining this instant motion for relief from

26  default. It was certainly well before a year after the default was entered (compare FRCP 60(c)(1),

27  and actually only a matter of approximately one month. Defendants immediately and diligently

1  moved to set aside the default once they were informed about the lawsuit and retained counsel.

2  Defendants specifically retained an attorney on June 13, 2011, and immediately thereafter this

3  motion to set aside the default was filed, literally two days later.

4          C.      **The Default Must be Set Aside in This Case Because Defendants Did Not have**

5                  **Actual Notice of the Lawsuit Before the Answer was Due**

6          Relief from default may be granted for procedural or jurisdictional irregularities in

7  obtaining the default. Such defects render it "void" within the meaning of FRCP 60(b)(4). More

8  specifically, relief may be granted where a defendant demonstrates that he or she received no

9  actual notice of the action before the answer was due. *Peralta v. Heights Med. Ctr., Inc.* (1988)

10  485 US 80, 85-86; *Stephenson v. El-Batrawi* (8th Cir. 2008) 524 F.3d 907, 912-913. A motion for

11  relief from default may even be granted where defendant (even if he or she had actual notice)

12  demonstrates defects in the service of process. *Carimi v. Royal Caribbean Cruise Line, Inc.* (5th

13  Cir. 1992) 959 F.2d 1344; *SEC v. Internet Solutions for Business Inc.* (9th Cir. 2007) 509 F.3d

14  1161, 1165-1166. Defects in service of process render a judgment void and subject to direct attack

15  by a motion for relief from default. *Mason v. Genisco Technology Corp.* (9th Cir. 1992) 960 F.2d

16  849, 851; *Central Laborers' Pension, Welfare & Annuity Funds v. Griffee* (7th Cir. 1999) 198 F.3d

17  642, 644; *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.* (6th Cir. 2003) 340 F.3d 345, 355;

18  See also, Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE

19  TRIAL [6:178-6:181.1] (The Rutter Group 2010).

20          In this case, defendants had no actual notice of the lawsuit that was filed against them, as

21  confirmed in the declarations submitted herewith. For defendant Alejandro Vazquez, the plaintiff

22  attempted to effectuate service of process through substitute service to another person by the name

23  of Brian Castillo, at 200 North Grand Avenue, #305, West Covina, CA 91791-1727. Defendant

24  Alejandro Vazquez has no idea who that person is, however, and never even lived at that address.

25  He lives in Sherwood, Oregon.. As a result, defendant Alejandro Vazquez had no notice of this

26  lawsuit until June 2, 2011 when he received a phone call from co-defendant Arturo Flores,

27  informing him of the lawsuit.

1    As for defendant Arturo Flores, he also did not have actual notice of the lawsuit until after
2    the Court had entered the default against him. More specifically, plaintiff also attempted to
3    effectuate service upon defendant Arturo Flores through substituted service. The individual, Jane
4    Doe, that the process server interacted with explicitly told the process server that she refused to
5    accept anything, whereupon the process server threw the summons and complaint on the street.
6    That woman (a tenant of Arturo Flores) then never informed defendant Arturo Flores of the
7    lawsuit. Defendant Arturo Flores also never received a copy of the summons and complaint via
8    mail either, despite the proof of service that plaintiff filed herein. The first notification that
9    defendant Arturo Flores received that a lawsuit had been filed against him was the notice that the
10   default had already been entered against him.

11         Given this situation and the applicable authorities as cited above, this Court must set aside
12   the default and give defendants an opportunity to be heard.

13         **D.      There is Good Cause to Set Aside the Default in this Case**

14         The relevant standard to set aside the entry of default is whether there is "good cause."
15   FRCP 55(c). "Good cause" can be demonstrated by showing a "mistake, inadvertence, surprise, or
16   excusable neglect." FRCP 60(b)(1). Again, the same underlying factors that are used in setting
17   aside a default judgment under FRCP 60(b)(1) are also used in setting aside a default under FRCP
18   55(c), although it is easier to merely set aside the entry of a default, as defendants are requesting in
19   this instant case.

20         **1.      Defendants Should be Relieved from Default Because of Surprise,**
21                   **Inadvertence, and Excusable Neglect**

22         These three terms, surprise, inadvertence, and excusable neglect, all boil down
23   basically to excusable neglect. In other words, has the moving party shown a reasonable excuse
24   for the default? *Meadows v. Dominican Republic* (9th Cir. 1987) 817 F.2d 517, 520. What
25   constitutes excusable neglect is basically an equitable determination, taking into account all
26   relevant circumstances surrounding the party's omission. Schwarzer, Tashima & Wagstaffe, CAL.
27   PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL [6:165.7] (The Rutter Group 2010).

1   Excusable neglect does encompass situations in which the failure to comply with a filing deadline

2   was negligent. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership* (1993)

3   507 U.S. 380, 394. Cases have also held that excusable neglect is found where there was a

4   reasonable belief (as there was here on the part of defendants) that no default would be taken based

5   upon communications with plaintiff's counsel or customer preventing "secret" default without

6   courtesy notice. *See e.g. Hutton v. Fisher* (3rd Cir. 1966) 359 F.2d 913, 915.

7        In the context of seeking relief from a default due to excusable neglect, the following

8   factors are determinative: (1) whether the default resulted from defendant's culpable conduct (i.e. a

9   devious, deliberate, willful or bad faith failure to respond), (2) whether defendant has a

10  meritorious defense, and (3) whether reopening the default judgment would prejudice plaintiff.

11  Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL

12  [6:165.7] (The Rutter Group 2010).

13       In this case, when analyzing the factors noted above, defendants should be relieved from

14  default because of excusable neglect. An analysis of each of the three factors follows:

15             **a.    Defendants Engaged in No Culpable Conduct**

16       First, defendants have demonstrated no culpable conduct, such as a willful failure to

17  respond. Merely failing to timely respond to the complaint that defendants were served with does

18  not constitute the culpable conduct that would justify a Court not setting aside a default. That type

19  of low standard of what constitutes culpable conduct is not the applicable law. The culpable

20  conduct on the part of defendants that would constitute a reason for the court to exercise its

21  discretion to not set aside a default would have to be some kind of devious, deliberate, willful, or

22  bad faith failure to respond. Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.

23  PRO. BEFORE TRIAL [6:165.7] (The Rutter Group 2010.)

24       Perhaps the best legal explanation for what constitutes "culpable" conduct on the part of a

25  defendant who did not timely respond to a lawsuit is as follows:

26

27        "[A] defendant's conduct is culpable if he has received actual or constructive notice
           of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697

1  (emphasis in original) (quoting *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988)); see also *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th
2  Cir. 1987) (defendant "intentionally declined" service). As we have previously explained, in this context the term "intentionally" means that a movant cannot be treated as culpable
3  simply for having made a conscious choice not to answer; rather, to treat a failure to
4  answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise
5  manipulate the legal process." TCI Group, 244 F.3d at 697. We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no
6  explanation of the default inconsistent with a devious, deliberate, willful, or bad faith
7  failure to respond." *Id.* at 698. As we explained in *TCI Group,* our approach is consistent with *Pioneer Investment Services Co. v. Brunswick Associates Ltd,* 507 U.S. 380, 388, 394-
8  95 (1993), in light of which it is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other
9  equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set
10  aside a default. See *TCI Group,* 244 F.3d at 696-97; see also *Lemoge v. United States,* 587 F.3d 1188, 1192 (9th Cir. 2009).
11  *United States v. Mesle,* 615 F.3d 1085, 1092-1093 (9th Cir. 2010)

12  The 9th Circuit Court of Appeals in *United States v. Mesle* explained that the district court

13  did not apply the applicable standard when determining whether Mesle's conduct was culpable.

14  Instead, the district court erroneously relied on language from *Franchise Holdings II,* in which the

15  court stated that a defendant's conduct may be considered culpable "[i]f [the] defendant has

16  received actual or constructive notice of the filing of the action and failed to answer," with no

17  mention of that failure being intentional. See 375 F.3d at 926 (internal quotations omitted). This is

18  not the ordinary standard for Rule 55(c) and 60(b) motions; in fact, the court has never applied it to

19  deny relief in the context of such motions *except when the moving party is a legally sophisticated*

20  *entity or individual. See, e.g., Franchise Holding II,* 375 F.3d at 924 (notice of action received by

21  counsel of company that later tried to set aside the default); *Direct Mail Specialists, Inc. v. Eclat*

22  *Computerized Tech., Inc.,* 840 F.2d 685, 690 (9th Cir.1988). It is possible to reconcile the

23  language in *Franchise Holdings II* with the standard in *TCI Group.* When considering a legally

24  sophisticated party's culpability in a default, an understanding of the consequences of its actions

25  may be assumed, and with it, intentionality. See *Direct Mail Specialists, Inc.,* 840 F.2d at 690

26  (defendant was "a lawyer, presumably . . . well aware of the dangers of ignoring service of

27  process"). The court in *United States v. Mesle* commented that it need not determine, however,

1 whether the *Franchise Holdings II* standard applies to more than sophisticated parties represented
2 by counsel who may be presumed to be aware of the consequences of their actions. The court
3 believed it was sufficient to observe that *Mesle* was not a lawyer and that he was unrepresented at
4 the time of the default; accordingly, the proper standard to apply was that of *TCI Group*. *Id*. at
5 1093.

6 When the district court did not set aside the default in *United States v. Mesle* that decision
7 was reversed on appeal. As the appellate court noted, if the proper standard was applied Mesle's
8 conduct was not culpable. The appellate court noted that the defendant in that case was ignorant of
9 the law and did not understand his obligations, which it described as not an unusual occurrence in
10 the case of a layman acting without the help of a lawyer. The court emphasized that it is important
11 to consider whether the movant had the benefit of counsel when the default was entered. *Id*. at
12 1093.

13 Here, in this case, it is clear that defendants' conduct cannot be considered culpable. At
14 the time the default was entered they did not even have actual notice of the lawsuit and were not
15 represented by counsel, as confirmed in the declaration submitted with the motion to set aside the
16 default. On the facts of this case there is simply nothing to suggest that defendants committed
17 some kind of devious, deliberate, willful, or bad faith failure to respond. The simple explanation is
18 that defendants did not receive actual notice of the lawsuit. Given the applicable standard, as
19 described above, it would be reversible error for this Court to not set aside the default. Defendants
20 must be allowed an opportunity to be heard and have their day in court.

21                              **b.      Defendants Have a Meritorious Defense**

22 "A defendant seeking to vacate a default judgment must present specific facts that would
23 constitute a defense. But the burden on a party seeking to vacate a default judgment is not
24 extraordinarily heavy." *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the
25 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a
26 defense…" *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700.)

27 ///

1    There is a very strong possibility (and indeed probability) that the outcome of this lawsuit

2 after a full trial will be contrary to the result achieved by the default. See e.g. *Hawaii Carpenters'*

3 *Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). In particular, the declarations of

4 defendants filed concurrently herewith demonstrate that at most defendants owned a swap meet

5 where someone else may have illegally exhibited the subject television program. The swap meet

6 included 80 different independent businesses at that time. Neither defendant had any direct or

7 indirect control over any television programs that any one of the individual businesses and/or their

8 owners or employees may have exhibited at this location. Defendants had no advance notice that

9 the television program was going to be exhibited at the property. Defendants did not give their

10 consent or permission for anyone to display that program and they did not even know it was going

11 to be done. In other words, defendants did not authorize any violation regarding television signal

12 piracy. Defendants were also not personally present when the fight program was allegedly

13 displayed and they did not personally gain any money whatsoever by the exhibition. They did not

14 derive any kind of benefit from the alleged signal piracy, certainly not any direct financial gain

15 from the violation. The numerous independent businesses that operate at this swap meet location

16 are independent businesses, and defendants were not their supervisors or bosses. In other words,

17 there is no employee or agency relationship and defendants did not have supervisory control over

18 everything that those people did, certainly not everything that each individual business decides to

19 display on a television. That is simply beyond my control, and defendants Arturo Flores and

20 Alejandro Vazquez cannot be responsible for illegal actions that someone else may decide to do.

21    The necessary elements in order to hold an individual personally liable in a television

22 signal piracy case are as follows:

23   (1) The individual defendant must have had control over the television at the time that

24     the alleged signal piracy occurred.

25   (2) The individual defendant authorized the violation; and

26   (3) The individual defendant must have derived some benefit from the alleged signal

27     piracy, specifically and obvious and direct financial gain from the violation.

1    *See, J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC* (E.D.N.Y. 2009) 648

2    F.Supp.2d 469, 473; *J & J Sports Productions, Inc. v. Kevin Daley* (2007) U.S. Dist.LEXIS

3    49839 at *10 (E.D. New York).

4        It is clear that given the facts and the role of defendants at the swap meet, there is an

5    insufficient basis to hold them liable for television signal piracy. In conclusion, defendants have

6    demonstrated a meritorious defense. This Court must set aside the default and allow defendants to

7    be heard.

8                    c.    **Plaintiff will Not be Prejudiced**

9        To be prejudicial, the setting aside of a judgment must result in greater harm than simply

10   delaying resolution of the case. The standard is whether plaintiff's ability to pursue its claim will

11   be hindered. *Falk v. Allen* (9th Cir. 1984) 739 F.2d at 463; see also *Thompson v. American Home*

12   *Assuranc* (6th Cir. 1996) 95 F.3d 429, 433-34 (to be considered prejudicial, "the delay must result

13   in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity

14   for fraud or collusion"). Merely being forced to litigate on the merits cannot be considered

15   prejudicial for purposes of lifting a default because had there been no default, the plaintiff would of

16   course have had to litigate the merits of the case, incurring the costs of doing so. As the court

17   stated in *TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F.3d 691, 701 "[a] default

18   judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her

19   claim because of her opponent's failure to respond; vacating the default judgment merely restores

20   the parties to an even footing in the litigation. See *Bateman*, 231 F.3d at 1225 (no prejudice simply

21   because a party loses a quick victory due to an opponent's procedural default and must litigate on

22   the merits)."

23       Here, much like in *TCI Group Life Ins. Plan*, defendants filed their motion to set aside the

24   default promptly, and since the entry of the default against them, defendants have litigated

25   diligently, retaining counsel and promptly filing a motion to set aside the default. Plaintiff has

26   suffered no credible harm due to the short delay that may have been caused by defendants' failure

27   to formally respond to the complaint and summons in a more timely fashion. Because there is no

1   prejudice that would come from setting aside the default, the Court should do so in this case.

2         For all of these above reasons, defendants' request to have this Court set aside the entry of

3   default should be granted.

4       **E.**     **Defendants Must Have an Opportunity to Be Heard**

5         By filing this motion to set aside the default defendants have appeared before this Court

6   and expressed their strong desire to be heard. Due Process requires an opportunity to be heard.

7   Indeed, "Procedural Due Process" and the 14th Amendment mandate that no one is deprived of

8   property without a fair opportunity to affect the judgment or result (i.e. be heard). Constitutional

9   Due Process standards as well as a general notion of fairness require that defendants be heard and

10   have an opportunity to present evidence in their defense on the underlying merits (or lack thereof)

11   of plaintiff's claims. In this case plaintiff J & J Sports Productions, Inc. is accusing defendants of

12   intentionally committing serious federal crimes and demanding compensation in excess of six-

13   figures. It would not be appropriate for this Court to engage in a rush to judgment against

14   defendants based merely upon the plaintiff's unsupported accusations. This Court must set aside

15   the default in this case and allow defendants to be heard.

16                                     **III.**

17                             **CONCLUSION**

18         For the numerous reasons outlined above, defendants respectfully request that this Court

19   set aside the default entered against them in this action. Defendants have a meritorious defense to

20   this action and should be allowed the opportunity to present their supporting evidence to a finder of

21   fact in a court of law. It would be a miscarriage of justice to allow the default to stand.

22         Respectfully submitted.

23   DATED: June 15, 2011                     LAW OFFICE OF MATTHEW PARE

24                                   By:     /s/ Matthew A. Paré

25                                           Matthew A. Paré, Esquire

26                                           Attorney for Defendants

27

1    **DECLARATION OF ATTORNEY MATTHEW A. PARE**

2    I, Matthew A. Paré, hereby state and declare as follows:

3        1.    I am an attorney licensed to practice law before all state and federal courts in the

4    State of California. I represent defendants Arturo Flores and Alejandro Vazquez in the above-

5    entitled action. I am personally familiar with all of the facts and circumstances as set forth in this

6    declaration, and could and would competently testify to the same if called upon to do so.

7        2.    I was retained by defendants in this case on June 13, 2011. Immediately thereafter,

8    on June 14, 2011, I sent plaintiff's counsel a correspondence requesting that he stipulate to set

9    aside the default. See the correspondence, attached hereto as Exhibit "A." Because plaintiff has

10   refused to stipulate to set aside the default it was necessary to file this motion, but I did make an

11   effort to meet-and-confer before filing this instant motion.

12       Respectfully submitted,

13           I, Matthew A. Paré, hereby declare under penalty of perjury under the laws of the

14   State of California and the law of the United States of America that the foregoing is true and

15   correct to the best of my own personal knowledge on the 15th day of June 2011, in Chula Vista,

16   California.

17

18                                    By:    /s/ Matthew A. Paré, Esquire

19                                           Matthew A. Paré, Esquire
                                             Declarant – Counsel for Defendants
20

21

22

23

24

25

26

27

Exhibit A



# MATTHEW A. PARÉ

ATTORNEY AT LAW

333 H STREET, SUITE 5059
CHULA VISTA, CA 91910

TELEPHONE: (619) 869-4999
FACSIMILE: (619) 475-6296

Sent via Facsimile

Tuesday, June 14, 2011

Thomas P. Riley, Esquire
Law Offices of Thomas P. Riley, P.C.
1114 Fremont Avenue
South Pasadena, CA 91030

   *Re:*  *J & J Sports Productions, Inc. vs. Arturo M. Flores and Alejandro Alex Vazquez,*
       *individually and d/b/a Los Amigos a/k/a Marakas Tropical a/k/a La Placita*
       Case No. 1:10-cv-02087-AWI-JLT

Dear Mr. Riley:

Please be informed that I have been retained to represent defendants in the above-entitled lawsuit. I note that according to the court records a default was entered against defendants, but you have not yet moved for a default judgment. I am hereby requesting that you voluntarily stipulate to set aside the default of defendants in this case and allow defendants to file an answer in this matter. By so stipulating we will save the judicial resources associated with needless motion work.

Please confirm in writing by 12:00 p.m. noon tomorrow, Wednesday, June 15, 2011, if you will so stipulate to set aside the default. If you do not agree to do so, I will promptly thereafter have no choice but to bring a motion to set aside the default. Given the strong policy of adjudicating disputes on their merits, I have no doubt that the court will set aside this default. Although I recognize that I am not giving you much time to consider this request, a quick turn around time is necessary because should I have to bring a motion to set aside the default I have an obligation to do so as soon as possible.

If you have any questions I can be reached at (619) 869-4999. Thank you.

Sincerely,

LAW OFFICE OF MATTHEW PARE

Matthew A. Paré
Attorney at Law

MAP

cc:  File



# MATTHEW A. PARÉ

ATTORNEY AT LAW

333 H STREET, SUITE 5059
CHULA VISTA, CA 91910

TELEPHONE: (619) 869 - 4999
FACSIMILE: (619) 475 - 6296

## FAX TRANSMITTAL

Date: June 14, 2011

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

| Name | Firm | Fax No. |
|------|------|---------|
| Thomas P. Riley, Esquire | Law Offices of Thomas P. Riley, PC | 626-799-9795 |

From: Matthew Paré, Esquire

TOTAL NUMBER OF PAGES, INCLUDING THIS PAGE: 2

Message: Please see the attached correspondence. Thank you.

☐ Original will follow
    ☐ regular mail
    ☐ federal express
    ☐ Other

☒ Original will not follow

IF YOU DO NOT RECEIVE ALL THE PAGE(S), PLEASE CONTACT OUR OFFICE AT
(619) 869 - 4999 AND ASK FOR MATT

CONFIDENTIAL INFORMATION

The pages comprising this telecopy transmission contain confidential information from this firm. This information is
intended solely for the use by the person or entity named as a recipient. If you are not the intended recipient, any
disclosure, copying, distribution, or use of the information is prohibited. If you receive this transmission by error, please
notify us by telephone immediately so that we may arrange to retrieve this information at no cost to you.

# HP Color LaserJet *2840*

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 956 | 6/14/2011 | 17:28:13 | Send | 16267999795 | 0:35 | 2 | OK |



**MATTHEW A. PARÉ**
ATTORNEY AT LAW

333 H STREET, SUITE 5039
CHULA VISTA, CA 91910

TELEPHONE: (619) 869 - 4999
FACSIMILE: (619) 475 - 6296

### FAX TRANSMITTAL

Date: June 14, 2011

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

Name
Thomas P. Riley, Esquire

Firm
Law Offices of Thomas P. Riley, PC

Fax No.
626-799-9795

From: Matthew Paré, Esquire

TOTAL NUMBER OF PAGES, INCLUDING THIS PAGE: 2

Message: Please see the attached correspondence. Thank you.

☐ Original will follow
   regular mail
   federal express
   Other

☒ Original will not follow

IF YOU DO NOT RECEIVE ALL THE PAGE(S), PLEASE CONTACT OUR OFFICE AT
(619) 869 - 4999 AND ASK FOR MATT

CONFIDENTIAL INFORMATION
The pages comprising this telecopy transmission contain confidential information from this firm. This information is
intended solely for this use by the person or entity named as a recipient. If you are not the intended recipient, any
disclosure, copying, distribution, or use of the information is prohibited. If you receive this transmission by error, please
notify us by telephone immediately so that we may arrange to retrieve this information at no cost to you.

## DECLARATION OF ARTURO    FLORES

I, Arturo    Flores, hereby state and declare as follows:

1.    I am a defendant in this instant action, specifically Case No. 1:10-cv-02087-AWI-JLT. At the time of the events giving rise to this lawsuit, specifically on November 14, 2009, co-defendant Alejandro Alex Vazquez and I owned a swap meet located at 8331 Kern Canyon Road, Bakersfield, CA 93306. This swap meet consisted of 80 different businesses, all operating on the premises that Alejandro Vazquez and I owned. There were a variety of businesses that existed there.

2.    I failed to formally respond to this lawsuit filed by J & J Sports Productions, Inc. within the time permitted by law for the following reason: I was never served with a copy of the summons and complaint in this case. Therefore, I did not have actual notice of the lawsuit until I received the notice that a default had been entered against me. I understand that the "proof of service" that plaintiff filed in this case indicates that the materials were left with a "Jane Doe" located at 423 South McBride Avenue, Los Angeles, CA 90022, and thereafter mailed to me at the same address. However, the woman that the lawsuit papers were allegedly delivered to never gave me the papers. I also never received the summons and complaint in the mail (despite the fact that the proof of service indicates it was mailed to me), and that is why I did not respond to the lawsuit in a timely manner.

3.    After receiving the notice of entry of default against me in this case, I investigated what may have happened as far as the service of process, given that I did not previously know about the lawsuit. I spoke with my tenant that    lives at 42  South McBride Avenue, Los Angeles, CA 90022, specifically Marlene Zunia, and she informed me that a process server attempted to leave lawsuit papers with her but she refused, and then the process server threw the papers on the street. Marlene Zunia indicated that she left the papers on the street and did not pick them up, deliver them to me, or even tell me about them because she did not want to be involved and she informed the process server

that she was not accepting anything.

4.  After receiving the notice of default that was entered against me in this matter, I sought out legal counsel and as soon as I was able I retained attorney Matthew Paré to represent me in this case. Specifically, he was formally retained on Monday, June 13, 2011. I do strongly desire to be heard in this matter and apologize for not responding to the lawsuit in a more timely manner. Given the fact that I never received the summons and complaint before the default was entered against me, however, it would have been impossible for me to respond to the lawsuit that I did not even know about.

5.  I believe that I have a very good defense to plaintiff J & J Sports Productions, Inc.'s Complaint filed herein for the following reason: Contrary to plaintiff's complaint I did not willfully or intentionally steal a television signal. In fact, I do not believe I have any liability in this case whatsoever. At the time of the events giving rise to this lawsuit co-defendant Alejandro Alex Vazquez and I owned a swap meet on the subject premises, located at 8331 Kern Canyon Road, Bakersfield, CA 93306. The swap meet included 80 different independent businesses at that time. I had no direct or indirect control over any television programs that any one of these individual businesses and/or their owners or employees may have exhibited at this location. With specific reference to the subject fight program, "Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program, on Saturday, November 14, 2009, I had no advance notice that the television program was going to be exhibited at my property. I did not give my consent or permission for anyone to display that program and I did not even know it was going to be done. In other words, I did not authorize any violation regarding television signal piracy. I was also not personally present when the fight program was allegedly displayed and I did not personally gain any money whatsoever by the exhibition. I did not derive any kind of benefit from the alleged signal piracy, certainly not any direct financial gain from the violation.

///

6.     The numerous independent businesses that operate at this swap meet location are independent businesses, and I am not their supervisor or boss. In other words, they are not my employees or agents and I do not have supervisory control over everything that they do, certainly not everything that each individual business decides to display on a television. That is simply beyond my control, and I should not be responsible for illegal actions that someone else may decide to do.

7.     Although I was not personally present during the alleged exhibition of the subject fight program, to my knowledge I do not believe there was any promotional advertising for the event. Based upon my investigation after the fact, I have been informed that there was no cover charge, very few people present to watch the event, and no premium was charged for food or beverages. To my knowledge, I also do not believe this was a repeated occurrence, and it is my understanding that there was hardly any, if any, profit that was made from this event (and if there was any profit it was not realized by me). Given all of those facts and circumstances, it would appear that the monetary damages in this case should be minimal, even against the responsible party. Again, as far as me personally, I do not believe that I have any liability for what allegedly occurred.

8.     Attached hereto as Exhibit "A" is a copy of the answer I propose to file in this action.

9.     I respectfully request that this Honorable Court allow me to be heard regarding the underlying facts of this case, and I wish to present my defense in this matter. Respectfully submitted,

I, Arturo     Flores, hereby declare under penalty of perjury under the laws of the State of California and the law of the United States of America that the foregoing is true and correct to the best of my own personal knowledge on the 14 day of June 2011, in Los Angeles , California.

By: _____
Arturo     Flores
Declarant

## DECLARATION OF ALEJANDRO VAZQUEZ

I, Alejandro Vazquez, hereby state and declare as follows:

1.      I am a defendant in this instant action, specifically Case No. 1:10-cv-02087-AWI-JLT. At the time of the events giving rise to this lawsuit, specifically on November 14, 2009, co-defendant Arturo M. Flores and I were in the process of dissolving our partnership that owned a swap meet located at 8331 Kern Canyon Road, Bakersfield, CA 93306. This swap meet consisted of 80 different businesses, all operating on the subject premises. There were a variety of businesses that existed there.

2.      I failed to formally respond to this lawsuit filed by J & J Sports Productions, Inc. within the time permitted by law for the following reason: I was never served with a copy of the summons and complaint in this case. Therefore, I did not have actual notice of the lawsuit until well after the default had been entered against me. I understand that the "proof of service" that plaintiff filed in this case indicates that the materials were left with a "Brian Castillo" located at 200 North Grand Avenue, #305, West Covina, CA 91791-1727, and thereafter mailed to me at the same address. However, I do not currently live there and in fact have never lived at that address. I also do not know a Brian Castillo. I also never received the summons and complaint in the mail, nor by any other means, and that is why I did not respond to the lawsuit in a timely manner.

3.      The first notification I received that this lawsuit was taking place was when I was contacted by co-defendant Arturo M. Flores, who informed me about the lawsuit recently and suggested that we retain attorney Matthew Paré. This phone conversation occurred on June 2, 2011. That was literally the first notice that I received that I was being sued. I currently do not even live in California, but rather live in Sherwood, Oregon.

4.      Based upon the recommendation of co-defendant Arturo M. Flores, I also retained attorney Matthew Paré to represent me in this case. Specifically, he was formally

retained on Monday, June 13, 2011. I do strongly desire to be heard in this matter and apologize for not responding to the lawsuit in a more timely manner. Given the fact that I never received the summons and complaint before the default was entered against me, however, it would have been impossible for me to respond to the lawsuit that I did not even know about. I did not even know about the default for that matter until I was informed about it by co-defendant Arturo M. Flores.

5.      I believe that I have a very good defense to plaintiff J & J Sports Productions, Inc.'s Complaint filed herein for the following reason: Contrary to plaintiff's complaint I did not willfully or intentionally steal a television signal. In fact, I do not believe I have any liability in this case whatsoever, for multiple reasons. The swap meet that co-defendant Arturo M. Flores and I previously owned at 8331 Kern Canyon Road, Bakersfield, CA 93306 included 80 different independent businesses at that time. I had no direct or indirect control over any television programs that any one of these individual businesses and/or their owners or employees may have exhibited at this location. With specific reference to the subject fight program, "Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program, on Saturday, November 14, 2009, I had no advance notice that the television program was going to be exhibited at the property. I did not give my consent or permission for anyone to display that program and I did not even know it was going to be done. In other words, I did not authorize any violation regarding television signal piracy. I was also not personally present when the fight program was allegedly displayed and I did not personally gain any money whatsoever by the exhibition. I did not derive any kind of benefit from the alleged signal piracy. certainly not any direct financial gain from the violation.

6.      The numerous independent businesses that operated at this swap meet location were independent businesses, and I was not their supervisor or boss. In other words, they were not my employees or agents and I did not have supervisory control over

everything that they do, certainly not everything that each individual business decides to display on a television. That is simply beyond my control, and I should not be responsible for illegal actions that someone else may decide to do.

7.    As an additional basis for there being no liability against me personally in this lawsuit, at the time of the alleged exhibition on November 14, 2009, the partnership between co-defendant Arturo Flores and I was in the process of being dissolved. The date of the agreement to dissolve the partnership was October 24, 2009, before this subject incident, and on November 1, 2009, Arturo Flores paid me the agreed-upon money to purchase my interest in this partnership business. Although that instrument was not recorded until January of 2010, pursuant to the partnership dissolution and settlement agreement between co-defendant Arturo Flores and I, I do not believe I technically had an ownership interest in this subject location on the date of the subject incident, and co-defendant Arturo Flores assumed all liabilities.

8.    To my knowledge, I do not believe there was any promotional advertising for the event. I also do not believe that this (showing a television program without paying the correct commercial rate to do so) was a repeated occurrence. Given the facts and circumstances, it would appear that the monetary damages in this case should be minimal, if anything, even against the responsible party. Again, as far as me personally, I do not believe that I have any liability for what allegedly occurred.

9.    Attached hereto as Exhibit "A" is a copy of the answer I propose to file in this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10.     I respectfully request that this Honorable Court allow me to be heard regarding the underlying facts of this case, and I wish to present my defense in this matter. Respectfully submitted,

I, Alejandro Vazquez, hereby declare under penalty of perjury under the laws of the State of California and the law of the United States of America that the foregoing is true and correct to the best of my own personal knowledge on the 15th day of June 2011, in Sherwood , Oregon.

By: _Alejandro Vazquez_
Alejandro Vazquez
Declarant

Exhibit A

Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No.: 1:10-cv-02087-AWI-JLT |
| Plaintiff, | **ANSWER OF DEFENDANTS ARTURO FLORES AND ALEJANDRO ALEX VAZQUEZ, INDIVIDUALLY AND d/b/a LOS AMIGOS a/k/a MARAKAS TROPICAL a/k/a LA PLACITA** |
| vs. | |
| ARTURO M. FLORES and ALEJANDRO ALEX VAZQUEZ, INDIVIDUALLY and d/b/a LOS AMIGOS a/k/a MARAKAS TROPICAL a/k/a LA PLACITA | **DEMAND FOR JURY TRIAL** |
| Defendants. | *[Pursuant to Federal Rules of Civil Procedure, Rules 8(b), 12(a), 38]* |
| JURY TRIAL DEMANDED | |

COME NOW defendants Arturo Flores and Alejandro Alex Vazquez, individually and d/b/a Los

Amigos a/k/a Marakas Tropical a/k/a La Placita (collectively referred to as "defendants" herein),

appearing by counsel, and file this Answer and Defenses in response to the Complaint of plaintiff J

& J Sports Productions, Inc.

| 1 | | AND NOW, the defendants answer the Complaint, paragraph by paragraph, as follows: |
|---|---|---|
| 2 | 1. | Admit. |
| 3 | 2. | Admit. |
| 4 | 3. | Admit that there is personal jurisdiction only. |
| 5 | 4. | Admit that venue is proper. |
| 6 | 5. | Admit that intradistrict assignment is proper. |
| 7 | 6. | Defendants are without sufficient information to admit or deny. |
| 8 | 7. | Admit only that Arturo Flores is an owner of the subject premises. |
| 9 | 8. | Deny. |
| 10 | 9. | Deny. |
| 11 | 10. | Defendants are without sufficient information to admit or deny. |
| 12 | 11. | Defendants are without sufficient information to admit or deny. |
| 13 | 12. | Defendants are without sufficient information to admit or deny. |
| 14 | 13. | Deny. |
| 15 | 14. | Deny. |
| 16 | 15. | Defendants are without sufficient information to admit or deny. |
| 17 | 16. | Deny. |
| 18 | 17. | Deny. |
| 19 | 18. | Deny. |
| 20 | 19. | Deny. |
| 21 | 20. | Deny. |
| 22 | 21. | Deny. |
| 23 | 22. | Deny. |
| 24 | 23. | Deny. |
| 25 | 24. | Deny. |
| 26 | 25. | Deny. |
| 27 | 26. | Deny. |

| | | |
|---|---|---|
| 1 | 27. | Deny. |
| 2 | 28. | Deny. |
| 3 | 29. | Defendants are without sufficient information to admit or deny. |
| 4 | 30. | Defendants are without sufficient information to admit or deny. |
| 5 | 31. | Deny. |
| 6 | 32. | Deny. |
| 7 | 33. | Deny. |
| 8 | 34. | Deny. |
| 9 | 35. | Deny. |
| 10 | 36. | Deny. |
| 11 | 37. | Deny. |

12    In response to the paragraphs following paragraph 37, beginning with the words

13    "WHEREFORE, Plaintiff prays" the defendants deny plaintiff is entitled to the relief prayed for or

14    any relief whatsoever. Defendants hereby demand a jury trial in this civil action.

15        Respectfully submitted.

16    DATED: June 15, 2011                            LAW OFFICE OF MATTHEW PARE

17
                                        By:    /s/ Matthew A. Paré
18
                                               Matthew A. Paré, Esquire
19                                             Counsel for Defendants

20

21

22

23

24

25

26

27

Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2011, I electronically filed the foregoing with the Clerk of

the Court using the ECF System which sent notification of such filing to the following:

Thomas P. Riley, Esq., State Bar No.: 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227
Phone: (626) 799-9797
Fax: (626) 799-9795
e-mail: TPRLAW@att.net

Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

By:     /s/ Matthew A. Paré

_____
Matthew A. Paré, Esquire