**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | 1:10-cv-02087-AWI-JLT |
| Plaintiff, ) | ORDER RE: MOTION TO ALTER OR AMEND JUDGMENT |
| v. ) | (Doc. 61) |
| ARTURO M. FLORES and ALEJANDRO ALEX VAZQUEZ, individually and dba LOS AMIGOS aka MARAKAS TROPICAL aka LA PLACITA, ) | |
| Defendants. ) | |
| AND RELATED CROSS-ACTION ) | |

**I. INTRODUCTION**

Plaintiff J & J Sports Productions, Inc. (hereinafter referred to as "Plaintiff") has filed a motion to alter or amend judgment. For reasons below, the motion shall be denied.

**II. FACTS AND PROCEDURAL BACKGROUND**

The Court refers the parties to previous orders for a complete chronology of the proceedings. On

November 9, 2010, Plaintiff filed its complaint against defendants Arturo M. Flores and Alejandro Alex Vazquez, individually and dba Los Amigos aka Marakas Tropical aka La Placita (hereinafter referred to as "Defendants"), asserting causes of action for violations of section 605 of the Federal Communications Act of 1934, as amended (47 U.S.C. § 605) and section 553 of the Federal Cable Communications Policy Act of 1992, as amended (47 U.S.C. § 553), conversion, and violation of California's Unfair Competition Law (UCL), California Bus. and Prof. Code sections 17200 et seq.

On July 16, 2012, Defendants filed their motion for summary judgment or summary adjudication in the alternative, contending the absence of genuine issues entitled them to judgment as a matter of law. On December 17, 2012, the Court granted Defendants' motion for summary judgment and awarded attorneys' fees in favor of Defendants as the prevailing party under the Communications Act. On January 15, 2013, Plaintiff filed a motion to alter or amend judgment (essentially a motion for reconsideration of the Court's December 17, 2012 summary judgment order) pursuant to Federal Rule of Civil Procedure 59(e), contending (1) the award of attorneys' fees to Defendants was clearly erroneous and (2) there was evidence in the record sufficient to create genuine issues of material fact. Defendants filed their opposition to Plaintiff's motion on February 1, 2013. Plaintiff filed its reply to Defendants' opposition on February 15, 2013.

### III. LEGAL STANDARD

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "is a proper vehicle for seeking reconsideration of a summary judgment ruling." *Tripati v. Henman,* 845 F.2d 205, 206 n. 1 (9th Cir. 1988) (per curiam). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington Northern Santa Fe R. Co.,* 338 F.3d 1058, 1063

(9th Cir. 2003) (internal citations, quotations, emphasis omitted). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

### IV. DISCUSSION

As a threshold matter, Plaintiff contends the award of attorneys' fees in favor of Defendants under the Communications Act was clearly erroneous. In its December 17, 2012 order granting Defendants' motion for summary judgment and awarding attorneys' fees in favor of Defendants and against Plaintiff under the Communications Act, the Court relied on *Echostar Satellite Corp. v. NDS Group PLC*, 390 Fed.Appx. 764, 767-78 (9th Cir. 2010) (*Echostar II*), finding the Ninth Circuit had interpreted the Communications Act as authorizing attorneys' fees "not only to an aggrieved party who prevails under the statute but also to a prevailing defendant." *J & J Sports Productions, Inc. v. Flores,* _F.Supp.2d_, 2012 WL 6608915 (E.D.Cal. 2012), at *12 (citing *Echostar II, supra,* 390 Fed.Appx. at 768). Plaintiff now contends this ruling was erroneous because the Communications Act only authorizes an award of attorneys' fees "to an aggrieved party who prevails," 47 U.S.C. § 605(e)(3)(B)(iii) – i.e., prevailing plaintiffs (according to Plaintiff) – but not prevailing defendants.

In support of this contention, Plaintiff points to the language of the statute itself, which provides "the term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e) of this section, shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming." 47 U.S.C. § 605(d)(6). Plaintiff implies that through this language, Congress intended that only parties who have standing to sue under the Communications Act – in effect, plaintiffs suing for violations of Communications Act sections – could properly be deemed aggrieved parties entitled to attorneys' fees. The Court does not necessarily disagree with this contention. *See National Satellite Sports, Inc. v. Eliadis, Inc.,* 253

3

F.3d 900, 911-14 (6th Cir. 2001) (finding Congress intended to " 'expand standing to sue' " by amending the Communications Act to include definition of "person aggrieved"). Problematically for Plaintiff, the Court is faced with the Ninth Circuit's pronouncement in *Echostar II* that the Communications Act "award[s] attorneys' fees to the *prevailing party*." *Echostar II, supra,* 390 Fed.Appx. at 768 (emphasis added). *Echostar II* did not say attorneys' fees may be awarded only to aggrieved plaintiffs, nor did it distinguish between prevailing plaintiffs and prevailing defendants.

Naturally, Plaintiff contends *Echostar II*, as an unpublished decision, is uncitable and should not be relied on by the Court. Plaintiff also cites three district court decisions that have interpreted the attorneys' fees provision of the Communications Act to hold defendants may not recover attorneys' fees. The Court acknowledges that because *Echostar II* is an unpublished decision, it cannot serve as binding precedent. Nevertheless, because Plaintiff has not provided – and the Court's research does not reveal – any binding authority on this issue, the Court exercises its discretion to view *Echostar II* as persuasive authority. The Court further notes the Ninth Circuit's pronouncement in *Echostar II* the Communications Act awards attorneys' fees to a prevailing party affirms a statement in the underlying district court opinion holding "[a]ttorney's fees in favor of the *prevailing party* are mandatory under . . . the Comm. Act." *Echostar Satellite Corp. v. NDS Group PLC,* 2008 WL 5116513 (C.D.Cal. 2008) (*Echostar I*) (*rev'd on other grounds by Echostar II, supra,* 390 Fed.Appx. 764), at *7 (emphasis added) (citing 47 U.S.C. § 605(e)(3)(B)(iii)). As a consequence, the Court finds the award of attorneys' fees not clearly erroneous. Given the plethora of cases arising under section 605 in this and other districts, the Court agrees, however, that there should be some institutional clarity on this issue. The Court therefore encourages Plaintiff to appeal.

Plaintiff further contends the Court's order granting summary judgment was clearly erroneous because Defendants failed to satisfy their initial burden as the moving party. In its complaint, Plaintiff had alleged Defendants were liable individually and dba Los Amigos aka Marakas Tropical aka La Placita, and throughout the course of the litigation, Plaintiff essentially alleged only one theory of liability – that Defendants were *directly* liable for the unlawful

4

interception and exhibition of a closed-circuit telecast of a Plaintiff-owned program allegedly committed at the Marakas Tropical bar, a vendor located on the premises of Defendants' swap meet. On motion for summary judgment, Defendants argued they could not be held directly liable under section 605 because they did not have (1) the right or ability to supervise the allegedly unauthorized interception and exhibition committed by the swap meet's vendor or (2) any obvious or direct financial interest in such interception and exhibition. The Court rejected this argument, finding the standard adduced by Defendants – that an individual must have had the right and ability to supervise a violation and a financial interest in the violation itself – applied only when a question arose as to whether "a corporate defendant may be held vicariously liable for a violation in his or her individual capacity and as an officer or director of the corporation when the corporation, not the individual is alleged to have committed the violation," *Flores, supra,* 2012 WL 6608915 at *4 (emphasis omitted), but not when, as here, "the swap meet is not a corporation and Defendants are not officers or directors." *Id*. at *5. The Court noted Defendants had provided "no argument or evidence to controvert the 'doing business as' allegation, nor any argument to suggest the swap meet had some sort of partnership, corporate or other business status of the type that could conceivably insulate Defendants from individual liability for the misconduct allegedly committed by the business." *Id*. The Court further noted Defendants had "concede[d] in their respective declarations that they are (or were, in Vazquez's case) owners of the swap meet." *Id*. Accordingly, the Court reasoned Defendants were "legally indistinguishable from the swap meet," and that, "[a]s a result, evidence sufficient to create a genuine issue of material fact as to the swap meet's liability automatically create[d] a genuine issue of material fact as to Defendants' individual liability, without the need for a concomitant showing Defendants had the right and ability to supervise the [section 605] violation and an obvious and direct financial interest in it." *Id.* From this, the Court concluded "Defendants' contention they did not have such right or interest is not ground for summary adjudication on the narrow question of their individual liability for the section 605 cause of action," *id*. at *5, and that "inasmuch as Defendants [sought] to meet their initial burden on summary judgment pursuant to the

5

[foregoing] standard," Defendants could not succeed. *Id*. at *4. Plaintiffs now contends that because this was the only argument raised in the motion, and because the Court found the argument to be not well taken, Defendants did not satisfy their initial burden sufficient to shift the burden to Plaintiff.

Not so. The abovementioned argument was not the only argument for summary judgment raised by Defendants, nor the only argument considered by the Court. Defendants also pointed to a complete absence of evidence in the record to show they committed the interception and exhibition, and the Court noted this lack of evidence. Plaintiff's contention Defendants did not meet their initial burden is therefore without merit. (The Court also noted Plaintiff had provided no evidence to support its theory of direct liability other than to suggest Defendants could be held liable simply because the interception/exhibition allegedly occurred at Defendants' swap meet. *Flores, supra,* 2012 WL 6608915 at *6. In its opposition to summary judgment, Plaintiff pointed to essentially only two facts: the declaration of an investigator stating he observed Plaintiff's program being shown without license at Marakas Tropical; and the allegation Defendants were doing business as Marakas Tropical. From this, Plaintiff contended Defendants were directly liable. The Court rejected this argument as without support in the law and found no triable issues on direct liability under section 605. *Id*. Consistent with this analysis, the Court found no triable issues on the remaining counts.)

Lastly, Plaintiff contends summary judgment should not have been granted with respect to the theories of vicarious and/or contributory liability under sections 605 and 533 because those theories were never addressed in Defendants' motion, and thus Plaintiff never had an opportunity to adequately respond. As Plaintiff correctly observes, Defendants only ever argued they could not be held directly liable; they did not argue they could not be held vicariously and/or contributorily liable. But that was because Plaintiff *never asserted* the theories of vicarious or contributory liability. As noted above, Plaintiff maintained throughout the litigation that the misconduct occurred at Marakas Tropical (i.e., on swap meet premises), and that Defendants were directly liable because they were doing business as Marakas Tropical; Plaintiff did not contend Defendant could be held vicariously or contributorily liable for the misconduct as the owners of the swap meet. The Court

6

raised (and dismissed) the issues of vicarious and contributory liability *sua sponte* – in effect, engaging in inferences most favorable to Plaintiff – by considering whether there was sufficient evidence in the record to support these theories. The Court sees no reason why Plaintiff should now be allowed to return to court and argue theories it did not have the foresight to raise in the first place.

## V. DISPOSITION

Based on the foregoing, Plaintiff's motion to alter or amend judgment is DENIED.

IT IS SO ORDERED.

Dated:   July 9, 2013

SENIOR DISTRICT JUDGE

7